STATE OF NORTH CAROLINA v. ANGELO McLAIN

No. 7010SC599

(Filed 16 December 1970)

1. Criminal Law § 6— defense of intoxication — necessity for instructions

Although there was evidence that the defendant had been drinking at the time he uttered a forged check, the trial court was not required to instruct the jury on the defense of intoxication where there was no evidence that the defendant's mental processes were deranged by intoxication.

2. Criminal Law §§ 101, 170—dictionary definition of offense — consideration by jury

Although it was improper for the jury to read a dictionary definition of one of the offenses charged in the bill of indictment, such impropriety was cured when the trial judge told the jury to disregard the dictionary definition and repeated his instructions on the elements of the offense.

APPEAL by defendant from *Ragsdale, Special Judge,* July 1970 Special Schedule "B" Session of WAKE Superior Court.

The defendant Angelo McLain was charged in a two-count bill of indictment, proper in form, with forgery and uttering a forged instrument. Upon the defendant's plea of not guilty, the case was submitted to the jury upon evidence which tended to show the following facts: On 27 March 1970, the defendant presented to Carol Terrill, a teller at First-Citizens Bank and Trust Company, Raleigh, North Carolina, a check in the amount of $82.19 drawn on the account of Wake Briarcliff, Inc., payable to Roy Adams and purportedly signed by Jeff Sugg.

Jeff Sugg testified that he was the owner of Wake Briarcliff, Inc., and that the check the defendant was charged with forging and uttering was not signed by him or by anyone else with his authority.

Carol Terrill testified that the defendant said he wanted to get the check cashed and that he signed the name of Roy Adams on the back.

Hague Bowman, an employee of the Bank, testified that the defendant presented the identification of Howard Thomas, Jr., not Roy Adams. Mr. Bowman stated that the defendant had a strong smell of alcohol on his breath, but that he did not appear intoxicated in any other way.

Angelo McLain testified in his own behalf that he had been drinking wine from about 6:00 a.m. until he went to the bank. He stated that shortly before 9:00 a.m. Roy Adams asked him to cash a check for him; that he asked Adams for some identification, but that he did not look at the check or at the identification to see if it belonged to Adams. He then went to the bank and handed the check to the teller and asked her if she would cash it. The defendant said, "I went up to the bank, I wasn't fully myself. If I had been I would have looked at that identification." The defendant testified that he did not know the check had been forged when he presented it for payment.

The jury returned a verdict of not guilty on the count charging the defendant with forgery and guilty on the count charging the defendant with uttering the forged check.

From judgment of imprisonment of two years, the defendan appealed.

*Robert Morgan, Attorney General, and James L. Blackburn, Staff Attorney, for the State.*

*Jordan, Morris and Hoke, by Robert P. Gruber, for defendant appellant.*

HEDRICK, Judge.

[1]    The defendant first assigns as error the court's failure to instruct the jury on the defense of intoxication. In *State v. Cureton,* 218 N.C. 491, 11 S.E. 2d 469 (1940), Barnhill, J., stated the rule with respect to the defense of intoxication as follows:

"While intoxication is an affirmative defense no special plea is required. However, to avail the defendant and require the court to explain and apply the law in respect thereto, there must be some evidence tending to show that the defendant's mental processes were so overcome by the excessive use of liquor or other intoxicants that he had temporarily, at least, lost the capacity to think and plan. As to this, he is not relegated to his own testimony. It is sufficient if the testimony of any witness tends to establish the fact. But it must be made to appear affirmatively in some manner that this defense is relied upon to rebut the presumption of sanity before the doctrine becomes a part

of the law of the case which the judge must explain and apply to the evidence."

Although there was evidence in the instant case that the defendant had been drinking, and the defendant himself testified that he was "pretty high" and that he was not fully himself, there is no evidence that the defendant's mental processes were deranged by intoxication, but, on the contrary, the defendant's own evidence tends to show that he was in complete control of his mental faculties. There was no prayer for special instructions, nor did the defendant indicate during the trial that he was relying on the defense of intoxication. This assignment of error is not sustained.

[2] Next, the defendant contends the court committed error by denying his motion for a new trial for alleged misconduct of the jury. The record reveals that during the jury's deliberation a definition of uttering copied from a dictionary by one of the jurors was taken into the jury room. The jury made inquiry of the court as to the definition of uttering, and told the judge what had happened. Judge Ragsdale told the jury to "disregard in every way" the dictionary definition and then proceeded to repeat his instructions as to the charge against the defendant of uttering the forged check. It was improper for the jury to obtain and read a dictionary definition of one of the offenses charged in the bill of indictment; however, the able trial judge properly instructed the jury to disregard the definition taken from the dictionary and the defendant has not shown that he was prejudiced in any way by the conduct of the jury. *In re Will of Hall*, 252 N.C. 70, 113 S.E. 2d 1 (1960).

We have carefully considered the record in this case and conclude that the defendant had a fair trial in the superior court free from prejudicial error.

No error.

Judges CAMPBELL and BRITT concur.